Reversed and Remanded and Opinion filed September 28, 2006








Reversed and Remanded and Opinion filed September 28, 2006.

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-04-00734-CR

____________

 

ROBERT J. SIMON, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the County
Criminal Court at Law No. 1

Harris County, Texas

Trial Court Cause No. 1188279

 



 

O P I N I O N

Challenging his conviction for driving while intoxicated (ADWI@), appellant
Robert J. Simon asserts various evidentiary complaints, and also contends that
the trial court reversibly erred by commenting on the weight of the evidence on
several occasions during the guilt-innocence phase of his jury trial.  Finding
merit in the latter contention, we conclude that the trial court=s improper
comments on the weight of evidence were reasonably calculated, when considered
from the jury=s standpoint, to benefit the State.  Accordingly, we
reverse the trial court=s judgment, and remand for a new trial. 








 I. Factual and Procedural
Background

Shortly after midnight, on August 12, 2003, appellant
Robert J. Simon drove his vehicle across four lanes of traffic and cut off
Officer Tony Tomeo and Officer Chad Nichols of the Houston Police Department,
who were traveling in a marked patrol car on the same roadway.  Officers Tomeo
and Nichols immediately signaled appellant to stop and pull over.  Appellant
complied.  

At trial, Officer Tomeo testified as follows: 

!                  
He was unsure
whether he was distracted or talking to Officer Nichols just before appellant
cut them off.  He did not see appellant speed, weave, or fail to maintain a
single lane prior to appellant cutting them off.

!                  
Officer Tomeo
smelled a strong odor of alcohol on appellant, which led him to believe that
appellant had been drinking.[1]


!                  
He asked
appellant if he had been drinking that night, but could not remember appellant=s response.[2]


!                  
Officer  Tomeo
administered three standard field sobriety tests, and one non-standardized
field sobriety test.  The first test was the Horizontal Gaze Nystagumus (AHGN@) test for which appellant displayed the maximum
number (six) of clues of intoxication.[3] 


!                  
Appellant
displayed all four possible clues on the one-leg-stand test, including swaying,
dropping his foot, hopping, and using his arms to balance during the test.  








!                  
Appellant had
difficulty performing the walk-and-turn test, but exhibited only three of the
eight possible clues of intoxication for this test.  Appellant was unable to
touch heel to toe during his steps, but Officer Tomeo was unsure which ones. 
Appellant also stepped off the line.[4] 


!                  
A person needs
to exhibit four clues on the walk-and-turn test before his performance counts
as a failure.  However, Officer Tomeo was not sure about the proper width of
extension for the arms during this test, and he did not know whether appellant
failed this portion. Officer Tomeo also did not know how far apart appellant=s feet were when appellant failed
to place his feet heel to toe.[5] 
Appellant did not have shoes on when he performed this test on the parking lot.


!                  
Officer Tomeo
also administered the non-standardized Rhomberg test in which he asked
appellant to tilt his head back, close his eyes, and estimate thirty seconds. 
While performing the test, appellant swayed noticeably from side to side.[6] 
In addition, consistent with the effects of alcohol, appellant estimated that
sixty-five seconds was thirty seconds.

 

Based upon their observations and appellant=s poor performance
on the field sobriety tests, Officers  Tomeo and Nichols concluded that
appellant had lost the normal use of his mental and physical faculties due to
alcohol consumption, and arrested him for driving while intoxicated.  Appellant
was taken to the police department.  While there, Sergeant Paul George
administered more sobriety tests, in addition to testing appellant=s breath with the
Intoxilyzer 5000 infrared spectrometer instrument.  








Sergeant George testified that the Intoxilyzer was working
properly on the evening he tested appellant=s breath.  The
samples, taken from appellant approximately one hour after Officer Tomeo
stopped appellant from driving, showed .214 grams of alcohol per 210 liters of
appellant=s breath at 1:10 a.m. , and .233 grams of alcohol per
210 liters of appellant=s breath at 1:13 a.m.  While at the
station, appellant attempted and failed both the one-leg-stand test and the
walk-and-turn test.  These attempts were captured on videotape.  Sergeant
George testified that appellant failed the walk-and-turn test by demonstrating
three of eight possible clues of intoxication, and that appellant demonstrated
two of four possible clues of intoxication during his attempt at the
one-leg-stand test.  Sergeant George, observing appellant at the police
station, noted appellant had the following symptoms of intoxication: (1) glassy
eyes,[7]
(2) slurred speech, (3) alcoholic breath, and (4) lack of balance without
support.  Sergeant George testified that appellant admitted that he had been
drinking earlier that night.  Based on his observations, Sergeant George
concluded that appellant was intoxicated due to alcohol consumption. 

II. Issues Presented

Appellant asserts the following points on appeal: 

(1)     The trial court erred in overruling his
objection to admission of the results of the HGN test because the proper
screening questions were not asked.

(2)     The trial court improperly commented on the
evidence by stating that appellant=s cross-examination of Officer Tomeo Adid not matter@ and by volunteering information to
explain why police patrol cars did not have video cameras. 

(3)     The trial court improperly commented on the
evidence by telling the jury that appellant=s cross-examination of Ricky Viser of the Houston Police
Department Crime Laboratory regarding the differences between the Intoxilyzer
used in this case, and the newer AEN@ model were irrelevant, and by
stating that the reason the State did not have state-of-the-art technology was
because of money.

(4)     The trial court improperly commented on the
evidence at trial by stating that appellant=s cross-examination of the State=s witness (Ricky Viser) was
misleading and Aoutside of what it is@ and by stating that the questions
being asked by appellant=s counsel were Anot real cross-examination.@ 








(5)     The trial court erred in excluding the
testimony of a witness offered to impeach the prior inconsistent statements of
Officer Nichols and as substantive evidence. 

(6)     The trial
court erred in excluding defense exhibit three, an offense report, allegedly
signed by both Officer Nichols and Officer Tomeo. [8] 

                                                    III. 
Analysis 

In support of
issues two through four, appellant points to several places in the record where
he contends that the trial judge improperly commented on the weight of the
evidence.  The first instance occurred during appellant=s
cross-examination of Officer Tomeo regarding the absence of audio recorders in
police patrol cars.  In his second issue, appellant cites to the following
exchange: 

Q: [Mr. Trichter]:              If
an audio recording would have been made, then this Jury could have heard the
instructions that you gave Robert?

A: [Officer Tomeo]: (No response). 

Q: [Mr. Trichter]               Right?


[The State]:            Objection.
Argumentative. 








[The Court]:           Mr.
Trichter, I don=t want to hear all of the things
that could have been done out there. You can cross him on everything that he is
trained to do. And, what he did. But, I don=t want to go into all of Awhat else could have happened.@  Next, you will be talking about, AWhy don=t we have a video in every patrol
car?@ And, we all know that answer to
that. A lot of lawyers ask B ask that question, and leave it hanging out there
as if there had been negligence, or not, by not having video tapes in their cars. 
And, when there=s really not money for it.

[Mr. Trichter]:         So, the
Court is commenting on the evidence? 

[The Court]:           So, I don=t want B I don=t want to go into that whole area.
That=s the kind of thing that you=re leading into.

[Mr. Trichter]:         Well, I
object to this Court commenting on the B

[The Court]:           We need to
know what all happened out there at the scene and not what could have happened.


[Mr. Trichter]:         I, again,
object to the Court commenting. And, I move for a mistrial. 

[The Court]:           Denied. Let=s proceed.

[Mr. Trichter]:         Is the
Court denying the Defendant the right to go ahead and put on this theory of the
case? 

[The Court]:           Well, you
may proceed under the B under the guideline that I just
set forth.

[Mr. Trichter]:         Well, my
question is B is the Court denying the citizen
accused the right to put on his theory of the B

[The Court]:           Well, no, I
don=t want to hear talk like that. Let=s just move on with whatever.  But,
away from all the things that he could have done, and without sending for more
cars.  It=s a very narrow thing that I don=t want you to do on cross. 

[Mr. Trichter]:         Well,
cross-examination is not supposed to be narrow, your Honor. 

[The Court]:           I know that.
Let=s proceed. 








Q:[Mr. Trichter]:               It=s suffice [sic] to say, Officer,
that had a tape recording where=s [sic] there an audio or a video been made, and preserved, we could
have played it here for this Jury to see and hear? 

A:[Officer Tomeo]:           If one
had been produced, it would have been here, yes, sir. 

Q:[Mr. Trichter]:               And,
you made a decision to not try and preserve a videotape or audio recording that
night? 

A:[Officer Tomeo]:           (No
response).

[The State]:            Objection.
Argumentative, Judge. There=s noB

[The Court]:           Sustained. 

 

(Emphasis
added).

In his third issue, appellant attacks the trial court=s comments made
during the testimony of the State=s witness, Ricky
Viser, a technical supervisor with the Houston Police Department Crime
Laboratory.  During direct examination, Viser testified that the Intoxilyzer
5000 used to test appellant=s breath has been replaced by a newer
versionCthe Intoxilyzer 
5000 EN.  Viser described the newer version as the same instrument as the one
used to test appellant=s breath, but enhanced with some
additional features.  Through cross-examination, appellant sought to explore
the differences between the two instruments.  It is this testimony that
appellant proffers to support his third issue: 

Q:[Mr. Trichter]:               What
are the differences, and if you know, between the AEN@ and the #5000? 

A:[Mr. Viser]:                   The
A68@ and the A68 EN@?

Q:[Mr. Trichter]:               Uh-huh?

A:[Mr. Viser]:                   Okay.
Thank you. The difference is . . . the A68 EN@ is an enhanced instrument.  It has
five filter wheels on it versus the three. The A68.@  The instrumentB








Q:[Mr. Trichter]:               Well,
if you will, Mr. Viser, stop right there. AFilter wheels.@ A filter wheel is kind of a safeguard on the device. It=s to make sure that it reads
alcohol and not something else? 

A: [Mr. Viser]:                  That=s correct. 

Q:[Mr. Trichter]:               So,
they added forty percent more filter wheels, and with the AEN,@ didn=t they?

A: [Mr. Viser]:                  They
added two additional filters. 

Q:[Mr. Trichter]:               Forty
percent more filters?

A: [Mr. Viser]:                  That=s correct. 

[The Court]:           Well, Mr.
Trichter, why are youBare you pursuing the Astate of the art@?  I mean, we don=t have the Astate of the art.@

[Mr. Trichter]:         Well, that=s it, your Honor. That=s it.

[The Court]:           I mean it
could have been because of money or something like that, I guess. 

[Mr. Trichter]:         Well, we=re going to get to money, and in a
little bit, too, Judge. 

[The Court]:           Well, IB

[Mr. Trichter]:         And,
because this was a Alow bid@ item. 

[The Court]:           Well, we
have what we have.  And, I don=t think it=s relevant about what else is out there.  So, I=m [sic] don=t want to go too far into this.

[Mr. Trichter]:         Well, that=s a comment on the evidence. And,
the court is not supposed to do that. And, I object to the Court making a
comment.

[The Court]:           Overruled.
So, any way, follow my instructions. And, not go there, again, unless it=sBit=sB

[Mr. Trichter]:         Well,
Judge, they=re the ones that brought in Ahow good this machine was.@ And, that one being replaced,
well, I wasn=t going to go there, and until they
brought it up. And, I have a right to comment on what they=ve made. 








[The Court]:           Well, you
do. But, the fact . . . I will remind you that. . .well, the fact is that they
might be better machines. But, we don=t have those machines, and in this
case. And, it might not be as good of a machine. And, if so, you can pursue that.
But, don=t go into the fact that there are
actually other machines out there. 

[Mr. Trichter]:         Well, the
new machines show the deficiency of the old machines.  And, that=s why they=re relevant, your Honor. This Jury
has the right to know that the science behind breath testing has increased so
much, and dramatically, that the machines that are presently used are outdated.
And, not worth the money that we pay for them. 

[The Court]:           Well, just
follow my instructions, Mr. Tichter, please. Overruled. 

[Mr. Trichter]:         Well, it
goes to his credibility, too. And, his credentials. Because he has to know what
the other machines are in the field.  So that, he knows what other advances, if
any, are being made. How can he do quality assurance, and if he doesn=t know about what else is
happening? He can=t live in a closet. 

[The Court]:           Well, this
man is not the proper man to answer those kinds of questions. 

[Mr. Trichter]:         Well, he
is, your Honor.

[The Court]:           Well, he
doesn=t have the authority to do anything about it.
So, I don=t want to have  any more discussion about this.
So, let=s continue. But, do what I said. 

[Mr. Trichter]:         Well, what
was your order, your Honor?








[The Court]:           My order was
to not proceed with questioning the . . .witness, and with newer things about
it. And, you can have your exception. And, you can put it in the record. And,
right now. Just say that you want to say. [sic]. 

[Mr. Trichter]:         Well, I
want to ask this witness questions about the Intoxilyzer #8000. And, I want to
talk to him about the differences between the #8000. Which is the state of the
art. And, how it measures temperature. And, how it measures volume.  And, that
these devices that we have B the A68 Series@ B doesn=t do that. And, the reason the manufacturer did that is
because B

. . .     

 

[The Court]:           Well, I knew
that, yes. Yes. And, Mr. Trichter, do you need to put something else, and on
the record here? 

[Mr. Trichter]:         Well, your
Honor, you just told me to do what I do. 

[The Court]:           And, then,
it stopped. Right?

[Mr. Trichter]:         Yeah. 

[The Court]:           And, you=re overruled. So, then, let=s move on. 

(Emphasis
added).  

In issue four, appellant attacks the following comments by
the trial court:

Q:[Mr. Trichter]:               Now,
if we go to the memory of your computer, there will be a file that has Ainvalid tests@ that came from thisBthat came from this device?

A:[Mr. Viser]:                   Yes,
sir. 

Q:[Mr. Trichter]:               And,
there are more than two Ainvalid tests@ in your files, and since it=s been in use? 

A: [Mr. Viser]:                  (No
response).








Q:[Mr. Trichter]:               Right?

A:[Mr. Viser]:                   (No
response). 

[The State]:            Objection.
Relevance. 

[The Court]:           Overruled. 

A:[Mr. Viser]:                   That=s correct. 

Q:[Mr. Trichter]:               And,
they [sic] are moreBthere are more than a hundred Ainvalid tests@ in that file, and since it has
been in use. Correct? 

A:[Mr. Viser]:                   That=s correct.  That shows that the
instrument is working. 

Q:[Mr. Trichter]:               Well,
give me just a Ayes@ or a Ano,@ sir?

A:[Mr. Viser]:                   I
said, AYes.@ 

Q:[Mr. Trichter]:               And,
there are more than a thousand Ainvalid tests@ in that file, sir?

A:[Mr. Viser]:                   (No
response).

[The Court]:           Well, Mr.
Trichter, you need to allow him to give a full answer to that. 

[Mr. Trichter]:         Well, your
Honor there is a difference between direct examination and cross-examination.
The Court is not permitted to let him tell his story. The Court is supposed to
have him answer the question. And, that=s what the adversary system is for. And, if they have
questions, they can ask him. But, you cannot let him deny the right for us to
tell our side of the facts. 

[The Court]:           Well, Mr.
Trichter, it=s about time that we have
cross-examination. And, it may be too late. And, when you ask a questions [sic]
like - like - like you=re saying B all of these Ainvalid tests@B you=re leading outside of what it is. Is it so necessary,
Mr. Trichter, for the Jury to have the B the B








[Mr. Trichter]:         Well, the
Court is commenting on the evidence, again, your Honor. And, I . . . must say
that I object to it. If you are taking the wrongB

[The Court]:           Well, I will
handle these, now. I=m going to let him give a full
answer. A full answer. 

[Mr. Trichter]:         Well, I=ll just sit down, then, your Honor,
because you are denying the Defendant the right to cross-examination. You=re denying the right to confront.
You=re making me ineffective as his
lawyer. And, until you take control of this witness, we cannot get a fair trial
in here. 

[The Court]:           Well, I=m taking control of this trial, Mr.
Trichter. 

[Mr. Trichter]:         Well, if
you have not, you=re denying us a fair trial. 

[The Court]:           I am in
control of this trial. (Pause). So, now, answer the question, and with a full
answer. 

[Mr. Viser]:            The. . .
there have been a lot of invaild tests. But, that=s a misconception, Judge. That=s showing that the instrument is
working properly. When it invalidate [sic] a test, it=s showing that the B that the subjectBwell, like a ARFI.@  If it was B if it was a radio frequency interference, it would
invalidate the test. And it=s doing just what it was designed to do. And, a lot B a lot of times, people take that
as a misconception, and like it=s not working. But, Judge, it=s really doing exactly what it=s supposed to. And, it is working. 

[The Court]:           All right.
Mr. Trichter, go ahead. 








[Mr. Trichter]:         Well, your
Honor, I don=t know. Because every time I ask a
question, you allow him to undercut the Defense=s case. So, with me continuing to ask questions, you
are, and in effect, allowing B helping him B helping the State B undermine the Defense. 

[The Court]:           Well, Mr.
Bailiff, take the Jury out. 

(Jury Removed)

 

The trial judge shall maintain an attitude of impartiality
throughout the trial.  Lagrone v. State, 84 Tex. Crim. 609, 209 S.W.
411, 415 (1919).  To the jury, the language and conduct of the trial court have
a special and peculiar weight.  See Livingston v. State, 782 S.W.2d 12,
14 (Tex. App.CDallas 1989, pet. ref=d).  Article 38.05
of the Texas Code of Criminal Procedure provides: 

Judge shall not discuss evidence

In ruling upon the admissibility of
evidence, the judge shall not discuss or comment upon the weight of the same or
its bearing in the case, but shall simply decide whether or not it is
admissible; nor shall he, at any stage of the proceeding previous to the return
of the verdict, make any remark calculated to convey to the jury his opinion of
the case. 

Tex. Code
Crim. Proc. Ann. art.
38.05 (Vernon Supp. 2005).  A trial court must refrain from making any remark
calculated to convey to the jury its opinion of the case.  Brown v. State, 122
S.W.3d 794, 798 (Tex. Crim. App. 2003).  In Brown, the Court of Criminal
Appeals explained the rationale for this rule, stating: 

[J]urors are prone to seize with
alacrity upon any conduct or language of the trial judge which they may
interpret as shedding light upon his view of the weight of the evidence, or the
merits of the issues involved. 

122
S.W.3d at 798.   The trial court improperly comments on the weight of the
evidence if it makes a statement that implies approval of the State=s argument,
indicates disbelief in the defense=s position, or
diminishes the credibility of the defense=s approach to the
case.  Clark v. State, 878 S.W.2d 224, 226 (Tex. App.BDallas 1994, no
pet.).  Applying this standard, we first examine whether the challenged
remarks, made by the trial judge during appellant=s jury trial, were
improper comments on the weight of the evidence.   








Jurors tend to take hold of a trial judge=s remarks, which
they often Ainterpret as shedding light upon his view of the
weight of the evidence, or the merits of the issues involved.@  Bachus v.
State, 803 S.W.2d 402, 405 (Tex. App.CDallas 1991, pet.
ref=d).  The Bachus
court observed, Ait defies logic and common sense to expect
a jury to tell its >own judge= that he is wrong.@  Bachus,
803 S.W.2d at 405.   The law commands that a judge presiding over a trial shall
govern the trial and his own conduct in such a manner that his opinion of the
merits of the case or the credibility of the witnesses shall not be made known
to the jury.  See Blumenthal v. State, 267 S.W. 727, 731 (Tex. Crim.
App. 1925) (stating that A[t]ransgressions of this rule, when
calculated to prejudice the case of the accused, have frequently been held to
demand a reversal of the judgment@).   

In ruling upon the admissibility of evidence, the trial
court should abstain from anything beyond a simple announcement of the ruling.  Wilson
v. State, 17 Tex. Crim. 525, 1885 WL6745, at *8 (Tex. Ct. App. 1885).  This
approach is crucial if the trial judge is to be viewed as dispensing justice
without fear, favor, or affection.  It is presumed that a judge can and will
divest himself of any previous conceptions and that he will base his rulings on
the facts developed at trial.  The fairness of a trial might be seriously
questioned if the jury=s perception of the trial judge is clouded
with a suspicion that he is becoming an advocate for one side or that he is
attempting to influence their judgment based on his unfavorable belief as to
the credibility of a party or position.  Thus, a trial judge should not express
an opinion on the weight of the evidence or imply in any manner that he
believes or disbelieves the testimony of any witness. 

Within the record excerpts quoted verbatim above, we
examine the propriety of the following comments as to which appellant preserved
error:[9]









[The Court]:           Mr.
Trichter, I don=t want to hear all of the things
that could have been done out there.  You can cross him on everything that he
is trained to do.  And, what he did. But, I don=t want to go into all of Awhat else could have happened.@  Next, you will be talking about, AWhy don=t we have a video in every patrol
car?@  And, we all know that answer to
that. A lot of lawyers askBask that question, and leave it hanging out there as if there had been
negligence, or not, by not having video tapes in their cars.  And, when there=s really not money for it. (Issue
two).

[The Court]:           Well, we
have what we have. And, I don=t think it=s relevant about what else is out
there. So, I=m [sic] don=t want to go too far into this. (Issue
three). 

[The Court]:            Well, you
do. But, the fact . . . I will remind you thatYwell, the fact is that they might be better
machines. But, we don=t have those machines, and in this
case. And, it might not be as good of a machine. And, if so, you can pursue
that. But, don=t go into the fact that there are
actually other machines out there.  (Issue three). 








[The Court]:           Well, Mr.
Trichter, it=s about time that we have
cross-examination. And, it may be too late. And, when you ask a questions [sic]
like - like - like you=re saying B all of these Ainvalid tests@B you=re leading outside of what it is. Is it so
necessary, Mr. Trichter, for the Jury to have the B the B (Issue four). 

 

In
viewing these comments in the context in which they were made, and in light of
the entire record, we conclude the trial court strayed beyond the boundaries of
permissible remarks: (1) by introducing factual matters not in evidence and (2)
by expressing the trial court=s opinions regarding the parties= positions.  








The trial court=s role is to rule
on the admissibility of the evidence, not to present evidence or share the
court=s views of the
case with the jury.  Though there is nothing in the record to suggest that the
trial judge acted with improper motives in presiding over the trial in this
case, we nonetheless conclude that his comments indicated a disbelief in
appellant=s position, and implied approval and support of the
State=s position. See
McClory v. State, 510 S.W.2d 932, 934 (Tex. Crim. App. 1974); Ward v.
State, 156 Tex. Crim. 472, 243 S.W.2d 695, 696B97 (1951).  For
instance, the trial court=s comment in regard to the relevancy of
the differences between the Intoxilyzer used to test appellant=s breath and the
newer model indicated the court=s unfavorable view of appellant=s position.   If
the trial court believed that the evidence was irrelevant and inadmissible, it
should have ruled as such and left it at that.  See Thompson v. State, 234
S.W. 406, 408B09 (Tex. Crim. App. 1921) (finding objectionable a
remark of the court, in excluding evidence that prosecuting witness was
operating a gambling resort where the crime occurred, Athat it was a very
good argument for a preacher to make, but does not sound like a lawyer@); Betts v.
State, 144 S.W. 677, 679 (Tex. Crim. App. 1912) (concluding that it was
improper for the court to state, in ruling on the admissibility of testimony, Athat a person
could tell a thing as well by hearing a thing as seeing it@); Tejeda v.
State, 905 S.W.2d 313, 317 (Tex. App.CSan Antonio 1995,
writ ref=d) (stating that
the trial court=s role is as a neutral referee not an
advocate); Pitt v. Bradford Farms, 843 S.W.2d 705, 708B09 (Tex. App.BCorpus Christi
1992, no writ) (concluding that the trial judge acted improperly by examining
the witness in front of the jury); Johnson v. State, No. 05-92-01060-CR,
1993 WL 332444, at *3 (Tex. App.CDallas Aug. 26,
1993, writ ref=d) (not designated for publication) (finding improper
the trial court=s continued exchange with appellant, its Ainstructions@ on questions of
law and fact, and its announcement of the pretrial ruling on admissibility of
appellant=s statement).  Instead, the trial court suggested its
own reasons for the State not having used the newer model, reasons that had no
evidentiary support in the record.  In addition, by his comments, the trial
judge signaled to the jury his own rejection of the points the defense was
trying to make.  Without judging the trial court=s intention in
making these comments, we conclude they were improper.  

We now must address whether these comments are material.  See
Burge v. State, 443 S.W.2d 720, 724 (Tex. Crim. App. 1969).  A matter is
material if the jury had the same issue before it. See Jackson v. State,
548 S.W.2d 685, 695 (Tex. Crim. App. 1977).  In this DWI case,  whether
appellant was intoxicated was a material issue for the juryCand a notably
disputed one.  The trial court=s comments (challenged in issue three)
regarding the differences between the Intoxilyzer used on appellant and the
newer model, as well as the purported reasons the police department did not
have the newer model were directly related to this material issue.  In
addition, the trial court=s comments (challenged in issue two) as to
why the police do not have portable video players in their patrol cars also was
related to the issues the jury had to decide.  However, the trial court=s comment
(challenged in issue four) that it was Aabout time that we
have cross-examination@ and that Ait may be too late@ were not
material.  

Having determined that the trial court=s comments in
issues two and three were material, we now must determine whether the error is
reversible.  To constitute reversible error in violation of Article 38.05, an
improper comment on the weight of the evidence must be such that it is either
reasonably calculated to benefit the State or to prejudice the defendant=s right to a fair
and impartial trial.  Brokenberry v. State, 853 S.W.2d 145, 153 (Tex.
App.CHouston [14th
Dist.] 1995, pet. denied).     








 Non‑constitutional error that does not affect
substantial rights is subject to a harm analysis under Texas Rule of Appellate
Procedure 44.2(b).  See Johnson v. State, 967 S.W.2d 410, 417 (Tex.
Crim. App. 1998); Matz v. State, 21 S.W.3d 911, 912 (Tex. App.CFort Worth 2000,
pet. ref=d).  Whether the trial
court=s material and
improper comments constitute reversible error is governed by a
non-constitutional error standard.  See Jasper, 61 S.W.3d at 421
(concluding that unless the trial court=s comments are
fundamental errors of constitutional dimension (tainting the defendant=s presumption of
innocence), an objection to such comments is necessary to preserve error); Tennison
v. State, 814 S.W.2d 484, 486 (Tex. App.CWaco 1991, no
pet.) (concluding that a mere violation of Article 38.05 does not necessarily
constitute reversible error, and if the error made no contribution to the
conviction of the defendant, then the error will be deemed harmless); Akudigwe
v. State, No. 14‑00‑00372‑CR, 2002 WL 28156, at *2B3  (Tex. App.CHouston [14 Dist.]
Jan. 10, 2002, no pet.) (not designated for publication) (citing to the
harmless error standard in evaluating whether the trial court=s comments
constituted reversible error). 

A substantial right is affected when the error had a
substantial and injurious effect or influence in determining the jury=s verdict. King
v. State, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997).  Substantial rights
are not affected by the erroneous admission of evidence Aif the appellate
court, after examining the record as a whole, has fair assurance that the error
did not influence the jury, or had but a slight effect.@  Motilla v.
State, 78 S.W.3d 352, 355 (Tex. Crim.  App. 2002).  Neither the appellant
nor the State has any formal burden to show harm or harmlessness under Rule
44.2(b).  See Burnett v. State, 88 S.W.3d 633, 638 (Tex. Crim. App.
2002).  Rather, it is the appellate court=s duty to assess
harm after a proper review of the record. Id.








In conducting the harm analysis, we consider everything in
the record, including any testimony or physical evidence admitted for the jury=s consideration,
the trial court=s instructions to the jury, the State=s theory, any
defensive theories, closing arguments, and even voir dire if material to the
appellant=s claim.  Motilla, 78 S.W.3d at 355B56; Morales v.
State, 32 S.W.3d 862, 867 (Tex. Crim. App. 2000).  In assessing harm, the
factors to be considered are the nature of the evidence supporting the verdict,
the character of the alleged error, and how the evidence might be considered in
connection with the other evidence in the case.  Motilla, 78 S.W.3d at
355; Morales, 32 S.W.3d at 867.  Whether the error was compounded or
emphasized also can be a factor.  See e.g., Motilla, 78 S.W.3d at 356. 
We ask if a reasonable probability exists that the error moved the jury from a
state of nonpersuasion to one of persuasion beyond a reasonable doubt. Wesbrook,
29 S.W.3d 103, 119 (Tex. Crim. App. 2000).  The existence of substantial
evidence of the defendant=s guilt may be the most significant factor
in a harm analysis.  Id. at 359. 

One of the most fundamental components of a fair trial is Aa neutral and
detached judge.@  Metzger v. Sebek, 892 S.W.2d 20,
37B38(Tex. App.CHouston [14th
Dist.] 1994, writ denied).  A judge should be fair and impartial and not act as
an advocate for any party.  Delaporte v. Preston Square, Inc., 680
S.W.2d 561, 563 (Tex. App.CDallas 1984, writ ref=d n.r.e.).  The
trial court should refrain from verbally confronting or displaying displeasure
toward counsel, particularly in the presence of the jury.  Metzger, 892
S.W.2d at 38.  Even in federal court, where a judge has the authority to
comment on the evidence, the judge may not assume the role of a witness.  See
U.S. v. Blevins, 555 F.2d 1236, 1240B41(5th Cir. 1977)
(stating that the trial judge has the right to analyze and comment on the
evidence provided that it is made clear to the jury that the comments merely
express view of the court which are not binding on the jury and that the jury
is free to determine the facts according to their own judgment); U.S. v.
Cisneros, 491 F.2d 1068, 1073B74 (5th Cir. 1974)
(holding that trial court committed reversible error when its comments added
evidence about a defense witness=s demeanor, and
affirming the principle that A[i]n commenting on the evidence, trial
judge may not give testimony, be a partisan witness or add to the evidence
adduced by either side and he must in no way trespass on the jury=s functions and
responsibilities, among the most important of which is the right to assess
credibility in finding the facts@).   








Part of the trial court=s responsibility
is to admonish counsel that in addressing the jury they are required to stay
within the record so that the jury will not base its decision on any evidence
not adduced at trial.  See McGee v. State, 689 S.W.2d 915, 925 (Tex.
App.CHouston [14th
Dist.] 1985, pet. ref=d) (concluding that an Aerror is
compounded by alleging that the facts not in evidence are true@).  Thus, for
reasons too obvious to state, the trial court also must stay within the record
in making remarks to the jury.  Indeed, because of the presiding role that the
trial judge serves during a trial, it is imperative that he be even more
careful to avoid making statements that are improper.  Strong v. State, 138
S.W.3d 546, 552 (Tex. App.CCorpus Christi 2004, no pet.) (stating
that although a judge can lawfully provide guidance and manage the presentation
of evidence from the bench, he must not abandon his role as an independent
arbiter).  








Though nothing suggests the trial court intended any
adverse consequences, his comments alerted the jury to the trial court=s opinion on a
material fact issue raised by the evidenceCwhether appellant
was intoxicated while driving.  In his response to appellant=s counsel=s questions
regarding audio recorders in patrol cars, and the differences between the
Intoxilyzer used for appellant=s breath test, and the Anewer@ model, the trial
judge injected new Afacts@ into the record,
and in the process diminished the credibility of the defense=s approach to the
case.  When a trial judge takes on the role of an advocate for the State,
introducing new Afacts@ that were not in
evidence, his actions and conduct that inure to the State=s benefit not only
impact the state of the evidence but also impact the dynamics of the trial.  See
Clark v. State, 878 S.W.2d 224, 226 (Tex. App.CDallas 1994, no
pet.) (finding that the trial court=s comments
regarding [appellant=s] prior convictions were reversible
error).  The trial judge=s ongoing exchanges with appellant=s counsel, and his
comments on how he assessed the defensive points appellant was attempting to
make bespoke a distinct negativity toward appellant=s position that
almost certainly did not escape the jury=s notice.  See
Preston v. State, 177 S.W.2d 968, 969 (Tex. Crim. App. 1944) (concluding
that court=s comment on the weight of the evidence of
nine-year-old girl for whose aggravated assault accused was being prosecuted
was error); Davis v. State, 24 S.W.2d 417, 418 (Tex. Crim. App. 1929)
(finding reversible a trial court=s comment in
response to a relevancy objection made by the state because such comment
implied the trial court=s belief that the conduct of the witness
evidenced the fact that he was a disinterested witness).  Moreover, the
comments of which appellant complains were not isolated or neutral comments. 








In assessing the impact of a trial court=s improper
comments, a reviewing court is concerned with whether the jury would be
unfairly influenced by additional comments from the bench.  Strong, 138
S.W.3d at 553 (finding that because comments were made outside the presence of
the jury, this concern was moot).  In this case, in viewing the record as a
whole, the jury could have been influenced toward the State=s position based
on the trial judge=s comments regarding the Intoxilyzer used
to test appellant=s breath and the newer version, as well as
by the judge=s comments regarding audio or video recorders in
patrol cars.            The evidence regarding appellant=s guilt is not
overwhelming and the testimony given by the officers who arrested appellant at
the scene was inconsistent in places.  Officer Nichols and Officer Tomeo
contradicted both each other and themselves on the appropriate steps and
procedures for all of the field sobriety tests conducted at the scene.  In
addition, the Intoxilyzer results (read by the technical supervisor, Ricky
Viser) showed .214 grams of alcohol per 210 liters of appellant=s breath at 1:10
a.m., and .233 grams of alcohol per 210 liters of appellant=s breath at 1:13
a.m.  However, Viser, during cross-examination, stated that in order for the
results of the breath test to be accurate, appellant would have had to have
consumed almost seventy drinks of Sambuca, and a person at this level would be Acommode hugging
drunk.@  This assessment
is inconsistent with the descriptions of appellant=s behavior at the
time he was actually stopped by Officers Tomeo and Nichols (which was an hour
earlier).  Neither Officer Tomeo nor Officer Nichols described appellant as
manifesting this high level of intoxication.  Some of the trial judge=s improper
comments related directly to the reliability of the Intoxilyzer used to test
appellant=s breath.  Though the trial court may have intended no
ill result, the absence of improper motive does not diminish the damaging
nature of the remarks.  Viewed objectively, the trial court=s comments were
reasonably calculated to benefit the State and prejudice appellant=s rights. See
Valles v. State, 817 S.W.2d 138, 141 (Tex. App.CEl Paso 1991, no
pet.) (concluding that the trial court=s comment, in
response to defendant=s objection was calculated to convey to
the jury its opinion of the case).  

For this reason, we cannot say with fair assurance  that
the trial court=s comments did not influence the jury=s decision or had
only a slight effect.  See Tex.
R. App. P.  44.2(b); Kincade v. State, 552 S.W.2d 832, 835B36 (Tex. Crim.
App.  1977) (concluding that the trial court=s comments were
improper and reasonably calculated to benefit the state); McDonald v. State,
193 S.W.2d 216, 217 (Tex. Crim. App. 1946) (finding reversible that when
the trial court overruled an objection to the introduction of certain testimony
and also provided an explanation that it was admitted for a certain purpose and
with a certain effect);  McPherson v. State, 182 S.W. 1114, 1116 (Tex.
Crim. App. 1916) (concluding that the court=s remark that A[a]ll this
cross-examination of the testimony of this witness could have been eliminated
upon objection by the state because the testimony is immaterial@ was reversible error). 
The trial court=s improper comments, considered as a
whole, require reversal and warrant a new trial.  Accordingly, we sustain
appellant=s issues two and three as related to the comments
specifically addressed above.  We reverse the trial court=s judgment and
remand this case for a new trial consistent with this opinion. 

 

 

/s/      Kem Thompson Frost

Justice

 

 

Judgment rendered
and Opinion filed September 28, 2006.

Panel consists of
Justices Anderson, Edelman, and Frost.

PublishC Tex. R. App. P. 47.2(b).

 









[1]  Officer Nichols, a trainee of  Officer Tomeo,
testified that appellant had bloodshot eyes, slurred speech, and alcoholic
breath.  He also testified that appellant had a difficult time balancing without
support. 





[2]  At trial, Officer Nichols testified that at some
point appellant admitted that he had been drinking  Sambuca earlier that
evening. 





[3]  Officer Nichols also testified that appellant
displayed all six clues on the HGN test.  Officer Nichols, however, was not
certified in this test and was not sure what clues he was Areally looking for on the HGN@ test.





[4]  In contrast, Officer Nichols testified that he
observed appellant step off the line, use his arms for balance, and miss heel to
toe on both the first and second steps of the nine steps. 





[5]  Officer Nichols testified that although he was not
certain, he believed that three clues (not four) were necessary to fail the
walk-and-turn test. Officer Nichols acknowledged that he did not know what was
required by the National Highway Traffic Safety Administration (NHTSA) in
regard to this test. 





[6]  Officer Nichols testified that he thought Officer
Tomeo told appellant to remain still during the Rhomberg test, but later
testified that he was unsure about the instructions given to appellant during
this test. 





[7]  Sergeant George also stated that appellant=s eyes could have been red because he had been crying.






[8]  We address issues two, three, and four together
because the analysis of all three issues is similar.  And we address these
issues first because our resolution of them is dispositive of the entire
appeal. 





[9]  In regard to the comments in issue three, the State contends that
appellant failed to timely object and preserve error regarding the following
comments: 

 

(1) AWhy are youBare you pursing the Astate of the art?@ I mean, we don=t have the Astate of the art.@; 

(2) Ait could have been because of money, or something
like that, I guess.@; and 

(3) Ahe doesn=t have the authority to do anything about it.@  

 

As a general rule, trial counsel
must object to preserve error, even if it is Aincurable@ or Aconstitutional.@   See Cockrell v. State,
933 S.W.2d 73, 89 (Tex. Crim. App. 1996).  However, the Texas Court of Criminal
Appeals, in a plurality opinion, stated that a trial judge=s comments Awhich tainted [the defendant=s] presumption of innocence in
front of the venire, were fundamental error of constitutional dimension and
required no objection.@  See Blue v. State, 41
S.W.3d 129, 132 (Tex. Crim. App. 2000) (stating in a plurality opinion that a
defendant need not object to comments from a trial court in order to preserve
error where such comments are held to constitute fundamental error); see
also Jasper v. State, 61 S.W.3d 413, 421 (Tex. Cim. App. 2001) (concluding
that Athe court may take notice of
fundamental errors affecting substantial rights although they were not
presented to the court@); Murchison v. State, 93 S.W.3d
239, 261B62 (Tex. App.BHouston [14th Dist.] 2002, pet. ref=d) (same); Hoang v. State, 997
S.W.2d 678, 680B81 (Tex. App.BTexarkana 1999, no pet.)
(addressing whether the trial court=s comments were improper even though appellant failed to
object to the comments).  We do not consider the comments made by the trial
court in this case to be fundamental error; therefore, an objection was
required to preserve error.  However, we conclude that appellant preserved
error as to the comments listed on pages 15 and 16 of this opinion.